**Earl LUNA et al., Appellants,**

v.

**Jack BLANTON, Appellee.**

No. B–3150.

Supreme Court of Texas.

Jan. 26, 1972.

Earl Luna, Robert E. Luna and David Jackson, Dallas, for appellants.

Crawford Martin, Atty. Gen., Sam L. Jones, Asst. Atty. Gen., Austin, for the State.

Stanfield & Greenberg, Robert M. Greenberg, Dallas, for appellee.

## ON CERTIFIED QUESTIONS

WALKER, Justice.

This case is before us on certificate from the Court of Civil Appeals for the Fifth Supreme Judicial District sitting at Dallas. The question to be decided is whether a candidate for the Texas Senate who seeks the nomination in a primary election to be held by an organized political party is subject to the provisions of Article 1.05 of the Texas Election Code, V.A. T.S., that require residency in the district for six months next preceding the last day for filing an application for a place on the primary election ballot. We will state the material facts, which are not disputed, rather than quote the certificate in full.

Jack Blanton, appellee, is a candidate for election to the Texas Senate from the 16th Senatorial District. Although not previously a resident of that district, he moved his residence to a location in the district on or about November 6, 1971. It is his intention to continue residing there, and

he will have been a resident of District 16 for at least twelve months before the General Election to be held on November 7, 1972. He did not become a resident of District 16, however, at least six months before February 7, 1972, which is the last day for filing an application for a place on the ballot for the 1972 primary elections.

On November 22, 1971, Blanton attempted to file with Earl Luna, Chairman of the Democratic Executive Committee of Dallas County, an application for a place on the ballot for the first Democratic Primary to be held on May 6, 1972. Luna refused to accept the application on the ground, among others, that Blanton was not a resident of District 16 at least six months prior to the last day for filing as required by Article 1.05. Blanton then filed a class action against Luna and George Bock, Secretary of the County Committee, to obtain a judgment declaring that Article 1.05 is unconstitutional as applied to him and that, in so far as his residence in District 16 is concerned, he is entitled to have his name printed on the primary election ballot. The Attorney General was served with process as required by Article 2524—1, Vernon's Ann.Tex.Civ.St., and filed an answer.

The trial court concluded that the only residence requirements applicable to candidates for the Texas Senate are those set out in Article III, Section 6, of the Texas Constitution, Vernon's Ann.St. Judgment was entered declaring that plaintiff and anyone similarly situated who established residence within a senatorial district prior to November 7, 1971, have met these requirements and are entitled to have their names placed on the primary election ballot in so far as residence in the district is concerned. Defendants appealed to the Court of Civil Appeals, which tentatively decided to affirm the judgment of the trial court. The question presented for decision is important, however, and it should be finally resolved prior to the filing deadline. Since the case would not reach this Court by writ of error in time for that to

be done, the Court of Civil Appeals certified the controlling questions to us and we, in the exercise of the discretion conferred by Rule 461, Texas Rules of Civil Procedure, decided to answer them. The case was accordingly set down for argument and has now been submitted on the briefs and oral argument.

The questions certified by the Court of Civil Appeals are stated in the certificate as follows:

"(1) Did the trial court err in holding that appellee Blanton was entitled to have his name placed upon the Democratic Primary ballot for the primary election of May 7, 1972, for the office of state senator, insofar as residential requirements are concerned?

"This question depends on the following question of law, which we also certify:

"(2) Does the exception provision contained in Article 1.05, Texas Election Code, as applied to a candidate for State Senate, render the provisions of the Constitution, Article 3, Section 6, applicable as opposed to the provisions of subsection 1, Article 1.05, Texas Election Code?"

From an examination of the certificate, we are satisfied that the first question refers to legal requirements with respect to residence in the district. There appears to be no controversy or proof concerning the period appellee has resided in the state.

Article III, Section 6, of our Constitution provides as follows:

No person shall be a Senator, unless he be a citizen of the United States, and, at the time of his election a qualified elector of this State, and shall have been a resident of this State five years next preceding his election, and the last year thereof a resident of the district for which he shall be chosen, and shall have attained the age of twenty-six years.

Article 1.05 was last amended in 1967. Its present provisions, with those in which

we are particularly interested set out in italics, are as follows:

*No person shall be eligible to be a candidate for,* or to be elected or appointed to, *any public office* in this state unless he is a citizen of the United States eligible to hold such office under the Constitution and laws of this state and is under none of the disabilities for voting which are stated in Article VI, Section 1 of the Constitution of Texas on the date of his appointment or of the election at which he is elected, and *unless he will have resided in this state for a period of twelve months next preceding the applicable date specified below, and for any public office which is less than statewide, shall have resided for six months next preceding such date in the district, county, precinct, municipality or other political subdivision for which the office is to be filled:*

(1) *For a candidate whose name is printed on the ballot for a general (first) primary election, the applicable date is the last day on which any candidate for the office involved could file his application to have his name printed on the ballot for that primary election.*

(2) For an independent or nonpartisan candidate in a general or special election, the applicable date is the last day on which the candidate's application for a place on the ballot could be delivered to the appropriate officer for receiving the application.

(3) For a write-in candidate, the applicable date is the day of the election at which the candidate's name is written in.

(4) For a party nominee who is nominated by any method other than by primary election, the applicable date is the day on which the nomination is made.

(5) For an appointee to an office, the applicable date is the day on which the appointment is made.

*The foregoing requirements shall not apply to any office for which the Constitution or statutes of the United States or of this state prescribe qualifications in conflict herewith, and in case of conflict the provisions of such other laws shall control.*

Except as provided in Section 104 of this code, no ineligible candidate shall ever have his name placed upon the ballot at any primary, general or special election. No ineligible candidate shall ever be voted upon nor have votes counted for him at any such primary, general or special election for the purpose of nominating or electing him, but votes cast for an ineligible candidate shall be taken into account in determining whether any other candidate received the necessary vote for nomination or election. No person who advocates the overthrow by force or violence or change by unconstitutional means of the present constitutional form of government of the United States or of this state, shall be eligible to have his name printed on any official ballot in any general, special or primary election in this state.

It is settled, of course, that where the Constitution prescribes the qualifications for holding a particular office, it is beyond the power of the Legislature to change or add to these qualifications unless the Constitution gives that power. Burroughs v. Lyles, 142 Tex. 704, 181 S.W.2d 570; State ex rel. Candler v. Court of Civil Appeals, 123 Tex. 549, 75 S.W.2d 253; Dickson v. Strickland, 114 Tex. 176, 265 S.W. 1012. Appellee urges this rule as the basis for his contention that Article 1.05 is unconstitutional and void. Appellants recognize the rule upon which appellee relies, but they say that Article III, Section 6, of the Constitution prescribes the qualifications of a candidate for the Senate in a general or special election while Article 1.05 of the Election Code deals with the qualifications of one who offers himself as a candidate for that office in a party primary. From this premise, they argue that the constitutional qualifications do not conflict with those set out in the statute, and that plaintiff's right to have his name on the primary ballot is governed by the provisions of the

statute. The Attorney General contends that there is no constitutional question in the case and that Article 1.05 simply does not apply to a candidate for the Texas Senate. We agree with the Attorney General.

The Legislature declared in plain terms that the requirements set out in the forepart of Article 1.05 "shall not apply to *any office*" for which the Constitution of Texas prescribes qualifications in conflict therewith. Article III, Section 6, of the Constitution prescribes the qualifications *for the office* of senator, and the qualifications there set out differ from and are in conflict with those found in Article 1.05. By its very terms the statute has no application to one who is a candidate for that office, and it is not necessary to determine whether, and the extent to which, Article 1.05 would be constitutional if the second paragraph had been omitted by the Legislature.

The first question certified by the Court of Civil Appeals is answered in the negative, and the second question is answered in the affirmative. No motion for rehearing will be entertained. Rule 515, T.R.C. P.